**NEFF, Appellant, v. BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION et, Appellees.**

Common Pleas Court, Montgomery County.

No. 105745. Decided December 4, 1953.

Raymond S. Caulfield, Dayton, for appellant.

Cowden, Pfarrer & Crew, Dayton, for General Motors Corporation.

John W. Hardwick, Asst. Atty. Genl., Columbus, for Board of Review.

## OPINION

By McBRIDE, J.

This case is one on appeal by the claimant from a decision of the Board of Review under the Unemployment Compensation Act denying a claim for benefits.

Virginia M. Neff, the claimant, is a married woman, the mother of three children, and an employee of Frigidaire Division, General Motors Corporation, at Dayton.

Claimant was employed by Frigidaire since January, 1948. She remained there until June 15, 1951, when she stopped working because she was pregnant. As authorized by the terms of the collective bargaining agreement between the employer and the union representing the employees. she applied for and was granted a "maternity leave of absence." Her absence from work was excused by the employer during pregnancy and for a period of six weeks after delivery. Claimant

was delivered November 18, 1951; and she was apparently ready and physically able to return to work during the first week in January, 1952.

After claimant had stopped working in June, and after she had been granted her maternity leave of absence, Frigidaire reduced its work force, in inverse order of seniority. About August 1, 1951, claimant received notice of layoff due to lack of work. The sequence of layoff and notice conformed to the bargaining agreement. She was not recalled to work by Frigidaire until March 5, 1952, and remained unemployed until the date of her recall.

On January 9, 1952, she filed her application and claim for unemployment compensation benefits for the benefit year beginning January 6, 1952. Her claim was allowed initially by the Administrator on January 25, 1952. Frigidaire then appealed. A hearing was held on the appeal pursuant to §1346-4 GC (§§4141.07, 4141.16, 4141.28, 4141.99 R. C.) on August 14, 1952. The referee, by decision dated September 19, 1952, reversed the administrator and held that claimant should be denied benefits under the act since she had not sustained the burden of proof to establish herself as being available for work and actively seeking work within the meaning of the act, immediately before, during, and just subsequently to the mandatory waiting period week.

On September 26, 1952, claimant filed her application for leave to institute a further appeal to the Board of Review, which was granted. A referee was appointed for the purpose of taking additional testimony, and upon completion of the further hearing on December 9, 1952, the entire record of the claim was returned to the Board of Review for its decision.

On February 23, 1953, the Board of Review announced its unanimous decision denying claimant's right to receive benefits under the act. The decision of the board was grounded on the fact that claimant became unemployed due to pregnancy and had not become reemployed and earned wages equal to her weekly benefit amount. The board said:

"The law disqualifies for benefits any applicant for unemployment compensation for the period of unemployment with respect to which it appears that the claimant became unemployed because of pregnancy. The period of unemployment subsequent to such separation can only be terminated by the individual's return to work pursuant to the provision of the statute above set forth.

"In the present instance it is contended that the notice of layoff issued to the claimant several weeks after the period of her leave of absence commenced altered the character of

her unemployment. Such notices are issued in conformity with the contract between the employer and the union to which the claimant belongs and are designed to assist the personnel department in the protection of the worker's seniority. They merely serve to fix the order in which the claimant may be entitled to recall to her former job. The claimant was on leave of absence which would not expire until six weeks after her baby was born, when under normal conditions and a continuing demand for her services she could expect to reclaim her job. The notice of layoff informed her that her ability to do so would depend upon industrial conditions. It in no way affected her leave of absence or her entitlement to maternity benefits in conformity with a company policy.

"The claimant became unemployed because of her pregnancy at that time. There is no evidence of earnings sufficient to remove the disqualification imposed because of leaving her job for that reason. Benefits may not properly be allowed.

"Decision:

"The decision of the referee, dated September 19, 1952, is hereby modified and the initial determination of claim, dated January 25, 1952, is hereby reversed. Benefit rights are suspended from January 6, 1952, and until she becomes reemployed and earns wages equivalent to her weekly benefit amount, because she quit work on account of pregnancy. Claim for the week ending January 12, 1952, is disallowed."

Sec. 1345-6-c (10) GC §4141.29-c-9 R. C., provides as follows:

"c. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:

"(10) quit work to marry or because of marital, parental, filial or other domestic obligations; **or became unemployed because of pregnancy**"; (emphasis ours indicates amendment effective January 1, 1952).

Sec. 1345-1-w GC (§4141.03 [Y] R. C.) first effective January 1, 1952, provides as follows:

"w. 'Duration of any period of unemployment' as used in this act, shall mean the full period of unemployment next ensuing after a separation from employment and until an individual has become reemployed in employment subject to the unemployment compensation act, or the unemployment compensation act of another state, Alaska, Hawaii, or of the United States, and until such individual has earned wages equal to his weekly benefit amount."

The pregnancy of a married woman is clearly a condition arising out of the "marital, parental, filial or other domestic obligations." To hold otherwise would disregard established laws and customs involving the family. Insofar as a married woman is concerned, the amendment effective January 1, 1952 which added the words "or became unemployed because of pregnancy" did not change existing laws. Therefore, question of a retroactive amendment does not arise where a married woman is involved.

Assuming that claimant left her job and completely terminated her relationship as an employee, it is clear that the pregnancy operated as a disqualification prohibiting payment of benefits. While pregnancy constitutes a good and worthy cause for leaving work, it is clearly not attributable to the employer or to the condition of the labor market. This unambiguous subsection illustrates the effect of special disqualification provisions of the act, expressly restricting good cause for leaving.

Where an employee is compelled to quit or suspend work because of sickness, separation is not without just cause and such employee is not disqualified from benefits in event of a subsequent layoff. In such cases, it is necessary to decide whether the condition causing the claimant to leave constituted a good cause. In the absence of a statutory expression, pregnancy constitutes a difficult problem because it includes not only sickness, but also a voluntary act and personal obligations independent of the employment. The pregnancy and family obligation clause of the Ohio act illustrates the effect of special disqualifications which restrict what might otherwise be construed as good cause. These disqualifications are exceptions to good cause.

It may be observed that this subsection has a general application. If a husband remained at home because he was sick, it would usually constitute good cause, however, if he did so to care for a sick member of the family, the marital disqualification would apply. The test under the act is personal ability and availability of the employee to work and not domestic responsibilities which are not within the purview of the unemployment act.

We have assumed that claimant left her job and completely terminated her relationship as an employee under the act when she ceased work at the commencement of her pregnancy leave. Generally the statutory expression "quit work," imports a complete severance of the employer-employee relationship. Elsewhere in this section, the statute uses the term "left his employment" by reason of a labor dispute. The

statute of Pennsylvania makes a distinction between the act of "voluntary suspension of work" and "voluntary leaving work without just cause." Yale & Town Manufacturing Company v. Unemployment Compensation Board, 163 Pa. Super 427, 62 A. 2d 99.

Claimant argues with some logic that this employee did not "quit work" in the sense that there was a severance of the relationship of employer and employee. In requesting and obtaining a pregnancy leave, appellant claims that she continued the relationship of an employee with contractual rights under the union contract without performing services which would entitle her to compensation. The contract was suspended in operation, not terminated. Employees are known to ask for additional vacation time without pay. Or the employer may declare a limited holiday or vacation period because of inventory, weather, emergency or production factors. The relationship continues during such period though services and compensation are suspended. In event of a layoff while such employee is temporarily absent he is not denied unemployment benefits if upon his return or resumption of production work is not available. Claimant argues that benefits should not be denied where an employee receives a layoff notice while on a recognized pregnancy leave and work is not available upon her return. The situation is similar to instances where the employee requests leave and is the cause of the initial failure of work. Why should benefits be allowed in one instance and denied in another. The answer must be found in the statutes which create benefits and not in private agreements. Neither the employer nor the employee may enlarge upon the benefits or the conditions for eligibility under the statutes. A labor contract cannot remove a disqualification expressed in the unemployment act.

The unemployment act protects the opportunity for uninterrupted work. Unemployment alone does not qualify an individual for compensation. There must be sufficient basic earnings in specified employment, ability and availability for work and the absence of causes which disqualify completely from benefits irrespective of the accumulated credits.

The act does not furnish a definition of the expression "quit work," however, it does define employment as "service performed for wages under any contract of hire * * *." **Sec. 4141.01 (B) R. C.** formerly §1345-1-c G.C. A discontinuance of performance of service for wages is an interruption of employment under the act. When claimant ceased to render services she, in effect, "quit work" and abandoned employment. This abandonment or cessation of work or employment

was directly caused by the condition of pregnancy which we have heretofore found disqualified claimant from benefits.

The fact that subsequently another cause arose which would not have deprived her of benefits does not re-establish eligibility. Once disqualified, eligibility must be determined by the statute and not the equities of the situation nor the private agreement of the parties.

It should be noted that the 1952 amendment, "or became unemployed because of pregnancy" does not require a quitting to constitute a suspension. An employee discharged because of pregnancy is equally disqualified.

The court questions the decision of the referee in rejecting the application on the weight of the testimony offered in support of availability and activity in seeking employment; however, the decision of the Board of Review that claimant was disqualified is sustained.

Appeal dismissed.